12-1657-cv
M.E.S., Inc. v. Snell

# UNITED STATES COURT OF APPEALS

### FOR THE SECOND CIRCUIT

August Term, 2012

(Submitted: November 7, 2012     Decided: March 19, 2013)

Docket No. 12-1657-cv

M.E.S., INC., GEORGE MAKHOUL,

*Plaintiffs-Appellants*,

v.

ELLA SNELL, in her individual capacity, RAYNETTE GURNEY, in her individual capacity, CHRISTOPHER NASTASI, in his individual capacity, ANTHONY LEVESANOS, in his individual capacity,

*Defendants-Appellees*.

Before:

B.D. PARKER, RAGGI, and LYNCH, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Swain, *J.*), holding First and Fifth Amendment <u>Bivens</u> claims against U.S. Army Corps of Engineers personnel, arising from the termination of construction contracts, precluded by the comprehensive scheme for resolving contract disputes with the federal government provided by the Contract Disputes Act of 1978, <u>see</u> 41 U.S.C. § 7101 <u>et seq.</u>

AFFIRMED.

Edward T. DeLisle, Cohen Seglias Pallas Greenhall & Furman, PC, Philadelphia, Pennsylvania, *for Plaintiffs-Appellants*.

Bertrand Madsen, Sarah S. Normand, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York, *for Defendants-Appellees*.

REENA RAGGI, *Circuit Judge*:

Plaintiff M.E.S., Inc. ("MES"), claims that the U.S. Army Corps of Engineers ("Corps") unfairly terminated three of its construction/renovation contracts. After its administrative challenges to these terminations were dismissed without prejudice—to allow MES and its insurer to determine which of them would manage those proceedings—MES and its President, George Makhoul, filed this action in the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*). Invoking Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), MES and Makhoul sued named Corps personnel in their individual capacities, alleging that their contracts were terminated in retaliation for criticism by MES of the Corps' mismanagement of construction projects, that these terminations negatively impacted MES's business, and that, as a result, they were deprived of their constitutionally protected rights to free speech and substantive due process. MES and Makhoul now appeal from a judgment entered on March 27, 2012, dismissing their complaint. See M.E.S., Inc. v. Snell, 10 Civ. 9513 (LTS), 2012 WL 1003570 (S.D.N.Y. Mar. 26, 2012). They contend that the district court erred as

2

a matter of law in ruling that their <u>Bivens</u> action was precluded by the Contract Disputes Act of 1978 ("CDA"), <u>see</u> 41 U.S.C. § 7101 <u>et seq.</u>

As a preliminary matter, we lack jurisdiction to review this claim as advanced by Makhoul because the text and caption of the original timely notice of appeal, dated April 24, 2012, failed to identify him as a party appealing from the judgment. <u>See generally</u> Fed. R. App. P. 3(c)(1)(A) (stating that notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice"). "The requirement that a party seeking to appeal be specified in the notice of appeal is jurisdictional." <u>Gusler v. City of Long Beach</u>, 700 F.3d 646, 648 (2d Cir. 2012) (dismissing appeal by party identified in caption but not named in body of notice of appeal); <u>see</u> <u>Torres v. Oakland Scavenger Co.</u>, 487 U.S. 312, 314 (1988) (holding that failure to name party in notice of appeal is "more than excusable 'informality'; it constitutes a failure of that party to appeal"). An amended notice naming Makhoul as an appellant was not filed until June 14, 2012, beyond the 60-day limit prescribed by Fed. R. App. P. 4(a)(1)(B). That time limit is also jurisdictional in civil cases, <u>see</u> <u>Napoli v. Town of New Windsor</u>, 600 F.3d 168, 170 (2d Cir. 2010) (citing <u>Bowles v. Russell</u>, 551 U.S. 205, 214 (2007)), and Makhoul's failure to abide by it or to seek an extension renders his belated filing inoperative, <u>see</u> <u>Gusler v. City of Long Beach</u>, 700 F.3d at 650. Accordingly, we hereby dismiss Makhoul's appeal and hereafter address only MES's challenge to the judgment of dismissal.

Although this court has not previously considered the preclusive effect of the CDA on <u>Bivens</u> claims, two of our sister circuits have done so and concluded that the statute's

3

complex procedural and substantive framework is comprehensive, precluding <u>Bivens</u> claims by aggrieved government contractors that relate to or derive from contract disputes. <u>See</u> <u>Evers v. Astrue</u>, 536 F.3d 651, 657 (7th Cir. 2008); <u>Janicki Logging Co. v. Mateer</u>, 42 F.3d 561, 564–65 (9th Cir. 1994). District courts appear uniformly to have reached the same conclusion in published and unpublished decisions. <u>See</u> <u>Aryai v. Forfeiture Support Assocs., LLC</u>, No. 10 Civ. 8952 (LAP), 2012 U.S. Dist. LEXIS 125227, at *55 (S.D.N.Y. Aug. 27, 2012); <u>Kesler Enters., Inc. v U.S. Dep't of Agric.</u>, No. 4:10-CV-169-BLW, 2010 WL 4641360, at *5–6 (D. Idaho Nov. 4, 2010); <u>Research Air, Inc. v. Norton</u>, No. 05-623 (RMC), 2006 WL 508341, at *8 n.8 (D.D.C. Mar. 1, 2006); <u>Teel v. DiLeonardi</u>, No. 98 C 2568, 1999 WL 133997, at *3 (N.D. Ill. Mar. 5, 1999); <u>Information Sys. & Networks Corp. v. U.S. Dep't of HHS</u>, 970 F. Supp. 1, 10 (D.D.C. 1997); <u>Advanced Materials, Inc. v. Burgess</u>, No. 94-2808, 1995 WL 25891, at *2 (E.D. La. Jan. 23, 1995), <u>aff'd</u>, 95 F.3d 47 (5th Cir. 1996) (unpublished table decision). We agree with these courts' analysis of the CDA, as well as with the district court's application of that reasoning to MES's <u>Bivens</u> claims in this case. Accordingly, we affirm the challenged judgment of dismissal.

4

**I.      Background**

A.      Termination of MES's Contracts

MES is a New York corporation that specializes in building complex structures such as laboratories, weapons testing facilities, and warehouses for munitions and explosives. Since 1992, it has performed construction work for the United States Department of Defense, specifically for the Army Corps of Engineers. Between September 19, 2003, and September 29, 2006, the Corps awarded MES three contracts for work to be performed at the Picatinny Arsenal in Dover, New Jersey ("Arsenal contracts").

The first contract, awarded to MES as part of a joint venture, related to the construction of a High Energy Propellant Formulation Facility, requiring the design and erection of thirteen new buildings and the renovation of three existing structures at a price of $16,549,000. The second contract, concerning the construction of an Explosive Research and Development Loading Facility, required MES to design and erect three new buildings and to renovate one existing building for a sum of $7,262,975. The third contract, relating to development of a Pyrotechnics Research and Technology Facility, called on MES to construct a pyrotechnics research center and flare tunnel for $10,628,832. Each of these contracts incorporated the "Disputes" provision of the Federal Acquisition Regulations, which subjected the agreements "to the Contract Disputes Act of 1978, as amended." 48 C.F.R. § 52.233-1(a).

It is undisputed that none of the Arsenal contracts was performed according to its specifications. Thus, between March and December 2008, the Corps provided MES with

5

written notice that, as a result of significant and unacceptable delays, it was terminating each of the contracts for default. Each notice stated that it "constitute[d] the final decision of the Contracting Officer in accordance with the Disputes Clause of the contract," and advised MES that, pursuant to the CDA, it could "appeal[] to the Armed Services Board of Contract Appeals" or "bring an action directly in the United States Court of Federal Claims." Mar. 5, 2008 Notice of Termination 19; Nov. 4, 2008 Notice of Termination 17; Dec. 22, 2008 Notice of Termination 25.

B.      MES's CDA Challenges to the Contract Terminations

Invoking the CDA, MES challenged the terminations of its Arsenal contracts before the Armed Services Board of Contract Appeals ("ASBCA"). See 41 U.S.C. §§ 7104(a), 7105(a). There, MES asserted that the Corps was responsible for the delays attending each contract due to myriad specifications defects and demands for additional unfunded work beyond that required by the original agreements. MES charged the Corps with breaching each of the Arsenal contracts, claimed that the terminations were arbitrary and improper, and asked that all three terminations for default be converted to terminations for convenience.

While these ASBCA proceedings were pending, Safeco Insurance Company of America ("Safeco"), MES's surety on the three Arsenal contracts, filed suit in the United States District Court for the Eastern District of New York, alleging that MES had breached the parties' indemnity agreements and that Safeco was thus entitled to assume ownership of MES's affirmative claims relating to the Arsenal contracts, including those before the

6

ASBCA. After the district court awarded Safeco partial summary judgment—a decision we affirmed, see Safeco Ins. Co. of Am. v. Hirani/MES, JV, 480 F. App'x 606 (2d Cir. 2012) (summary order)—MES requested that the ASBCA stay the administrative proceedings pending resolution of the rights and intentions of Safeco, which MES feared might not vigorously press its claim that the Corps had breached the Arsenal contracts. Instead, but for the same purpose, on September 10, 2010, the ASBCA dismissed MES's appeals without prejudice. See ASBCA R. 30 (effective May 11, 2011), http://www.asbca.mil/Rules/forms/Rules11May2011.pdf (authorizing dismissal without prejudice in Board's discretion, which "shall be deemed with prejudice" if neither party seeks reinstatement within three years).

C.  District Court Proceedings

MES did not seek to reopen proceedings before the ASBCA. Rather, on December 22, 2010, MES and Makhoul commenced this action in the Southern District of New York against defendants Ella Snell, a contracting officer in the Corps' New York District; Raynette Gurney, the Corps' Chief of Contracting for the North Atlantic Division; Christopher Nastasi, an administering contracting officer in the New York District; and Anthony Levesanos, a Corps program manager. In the Second Amended Complaint, the pleading pertinent to this appeal, MES and Makhoul claimed that by terminating the Arsenal contracts for default, these defendants had (1) deprived plaintiffs of substantive due process under the Fifth Amendment by causing "permanent injury to MES' reputation and the complete loss

7

of MES as a going concern," Compl. ¶ 82; (2) infringed MES's and Makhoul's First Amendment rights to free speech by using the terminations to retaliate for Makhoul's complaints that the Corps had violated the Anti-Deficiency Act in demanding that MES perform additional unfunded work, see 31 U.S.C. § 1341(a)(1); and (3) subjected Makhoul to injurious falsehood under New York law. Plaintiffs sought compensatory and punitive damages and attorney's fees.

By Opinion and Order dated March 26, 2012, the district court granted defendants' motion to dismiss the case for lack of subject matter jurisdiction. See M.E.S., Inc. v. Snell, 2012 WL 1003570, at *9. The district court held that plaintiffs could not maintain a Bivens action based on allegations that termination of the Arsenal contracts violated their rights to free speech and due process, because the CDA afforded them a comprehensive remedial scheme for complaints relating to the termination of government contracts. See id. at *5–8 (citing Bush v. Lucas, 462 U.S. 367, 388 (1983) (declining to recognize Bivens action for alleged First Amendment violation where plaintiff's claim arose out of employment relationship governed by comprehensive procedural and substantive scheme affording meaningful remedies against United States)).

This appeal followed.

8

## II.    Discussion

### A.    Standard of Review

Courts appear divided on whether preclusion of a <u>Bivens</u> action by the CDA warrants dismissal for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), <u>see</u> <u>Evers v. Astrue</u>, 536 F.3d at 657; <u>Information Sys. & Networks Corp. v. U.S. Dep't of HHS</u>, 970 F. Supp. at 4, or for failure to state a claim under Fed. R. Civ. P. 12(b)(6), <u>see</u> <u>Janicki Logging Co. v. Mateer</u>, 42 F.3d at 563.  We need not decide that question here, as the result would be the same under either approach.  In both cases, we review the district court's legal determination <u>de novo</u>, accepting as true all material factual allegations in the complaint, <u>see</u> <u>Gibbons v. Malone</u>, 703 F.3d 595, 599 (2d Cir. 2013) (failure to state claim); <u>Ford v. D.C. 37 Union Local 1549</u>, 579 F.3d 187, 188 (2d Cir. 2009) (<u>per curiam</u>) (lack of jurisdiction); under Rule 12(b)(1), we are permitted to rely on non-conclusory, non-hearsay statements outside the pleadings, <u>see</u> <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004), which we cannot consider under Rule 12(b)(6) unless they are incorporated within or integral to the complaint, <u>see</u> <u>Roth v. Jennings</u>, 489 F.3d 499, 509 (2d Cir. 2007).  Here, although MES submitted a sworn declaration by Makhoul further detailing the circumstances surrounding his claim, those additional facts make no difference to the pure question of law as to whether the CDA precludes a <u>Bivens</u> claim relating to a federal contract.  We turn to that question.

9

B.     Implying Constitutional Claims under *Bivens*

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 ("Bivens"), the Supreme Court recognized as implicit in certain constitutionally protected rights a federal claim for money damages against federal officials, sued in their individual capacities, for violations of those rights.  Precisely because Bivens is a judicially created remedy, however, federal courts have been reluctant to recognize such implied relief. See Arar v. Ashcroft, 585 F.3d 559, 571–72 (2d Cir. 2009) (en banc) (characterizing Bivens remedy as "extraordinary thing that should rarely if ever be applied in new contexts" and observing that, after Bivens, Supreme Court has recognized implied constitutional causes of action only twice (internal quotation marks omitted)).  As the Supreme Court recently explained, "consideration of a Bivens request follows a familiar sequence" that involves two inquiries: (1) whether there is "any alternative, existing process for protecting the" affected interest that "amounts to a convincing reason for the Judicial Branch to refrain from providing a new [damages] remedy"; and (2) whether, "even in the absence of [such] an alternative, . . . any special factors counsel[] hesitation before authorizing a new kind of federal litigation."  Wilkie v. Robbins, 551 U.S. 537, 550 (2007) (internal quotation marks omitted); accord Arar v. Ashcroft, 585 F.3d at 572.

With respect to the first of these inquiries, the Supreme Court has stated that if the conduct at issue already is "governed by comprehensive procedural and substantive provisions [of law] giving meaningful remedies against the United States," then it is

10

"inappropriate" for courts "to supplement that regulatory scheme with a new judicial remedy." Bush v. Lucas, 462 U.S. at 368. The fact that such a remedial scheme does "not provide complete relief for the plaintiff" warrants no different conclusion. Id. at 388. Indeed, in such circumstances, courts will generally assume that Congress's omission of the particular relief sought by the plaintiff "has not been inadvertent." Schweiker v. Chilicky, 487 U.S. 412, 423 (1998) (explaining that assumption derives from "appropriate judicial deference to [considered] congressional inaction"); see also Dotson v. Griesa, 398 F.3d 156, 169–76 (2d Cir. 2005) (construing Civil Service Reform Act of 1978 to evince Congress's decision to exclude judicial branch employees from statutory review procedures). Nor will allegations of "illegitimate motives" support recognition of a Bivens claim for conduct subject to a comprehensive remedial scheme. Western Radio Servs. Co. v. U.S. Forest Serv., 578 F.3d 1116, 1125 (9th Cir. 2009). In sum, in the face of a comprehensive scheme, federal courts will decline to infer "new substantive legal liability without legislative aid," mindful "that Congress is in a better position to decide whether or not the public interest would be served by creating it." Bush v. Lucas, 462 U.S. at 390 (internal quotation marks omitted).

11

C.     The CDA Creates a Comprehensive Scheme for Reviewing Claims Relating to Federal Contracts that Precludes MES's *Bivens* Action

In conferring original jurisdiction on federal district courts to hear civil claims against the United States, Congress expressly excluded "any civil action or claim against the United States founded upon any express or implied contract with the United States" that is subject to review under the CDA.  28 U.S.C. § 1346(a)(2).  Congress thereby identified the CDA review process as the sole means for resolving contract disputes against the federal government.  To be sure, § 1346 does not speak to civil actions that contractors might bring against United States employees in their individual capacities for alleged constitutional violations relating to government contracts.[1]  Nevertheless, where, as here, a plaintiff's constitutional claims originate in contract obligations for which the comprehensive procedural and substantive provisions of the CDA afford meaningful—and exclusive—remedies against the United States, "we conclude that it would be inappropriate for us to supplement that regulatory scheme with" new judicial remedies against United States employees pursuant to Bivens.  Bush v. Lucas, 462 U.S. at 368.

In reaching that conclusion, we begin with the CDA itself, which by its terms applies broadly "to any express or implied contract . . . made by an executive agency for . . . the procurement of construction, alteration, repair, or maintenance of real property."  41 U.S.C.

---

[1] It is beyond dispute that such claims cannot be brought against the federal government.  See Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994) ("[T]he United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts."); see also FDIC v. Meyer, 510 U.S. 471, 485–86 (1994).

§ 7102(a)(3). This language certainly reaches the Arsenal contracts that MES complains defendants wrongfully terminated. The CDA provides for persons aggrieved in connection with such contracts to submit "[e]ach claim . . . against the Federal Government" to a contracting officer, id. § 7103(a)(1)–(2), who "shall issue a decision in writing," id. § 7103(d). A "contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency," except as authorized by the CDA itself. Id. § 7103(g). The CDA provides that within 90 days of receipt of a contracting officer's decision, an aggrieved contractor may either appeal to the ASBCA, see id. § 7104(a), or "bring an action directly on the claim in the United States Court of Federal Claims," id. § 7104(b)(1). In each instance, further review may be had in the United States Court of Appeals for the Federal Circuit. See id. § 7107(a)(1)(A).

Courts have characterized this remedial scheme as "the paradigm of a precisely drawn, detailed statute," which "purports to provide final and exclusive resolution of all disputes arising from government contracts" that fall within its ambit. A&S Council Oil Co. v. Lader, 56 F.3d 234, 241 (D.C. Cir. 1995); accord Evers v. Astrue, 536 F.3d at 657; Campanella v. Commerce Exch. Bank, 137 F. 3d 885, 891 (6th Cir. 1998); see also Janicki Logging Co. v. Mateer, 42 F.3d at 564–65 (observing that CDA embodies "precisely the kind of . . . complex procedural and substantive remedial scheme" referenced by Supreme Court and Ninth Circuit in identifying circumstances not warranting recognition of Bivens action).

13

MES does not quarrel with the general comprehensiveness of the CDA. It nevertheless insists that constitutional claims against federal employees in their individual capacities fall outside the purview of a statute that affords relief only as against the federal government itself. Supreme Court precedent defeats this argument.

In Bush v. Lucas, a federal employee who alleged that he was demoted for publicly criticizing the agency for which he worked successfully used the "elaborate, comprehensive" civil service review scheme to secure reinstatement and full back pay from the United States. 462 U.S. at 386. Thereafter, he filed a Bivens action against his supervisor to recover for uncompensated First Amendment injuries. See id. at 371–72. The Supreme Court declined to recognize the Bivens claim, even assuming that the plaintiff's "First Amendment rights were violated by the adverse personnel action" and that the administrative relief afforded against the United States was "not as effective as an individual damages remedy" against the violating supervisor in compensating the employee for the constitutional harm suffered. Id. at 372. The Court explained:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff.

Id. at 388. Among the concerns identified by the Supreme Court that counseled against supplementing civil service relief against the government with a Bivens action against an

individual government employee was the probability that "if management personnel face the added risk of personal liability for decisions that they believe to be a correct response to improper criticism of the agency, they would be deterred from imposing discipline in future cases." Id. at 389. This special circumstance only reinforced the conclusion that "Congress is in a far better position than a court to evaluate the impact of a new species of litigation between federal employees on the efficiency of the civil service." Id.

The Supreme Court relied on similar reasoning in Schweiker v. Chilicky to hold that the wrongful denial of Social Security disability benefits, allegedly resulting from due process violations by program administrators, did not give rise to a Bivens action for money damages against those administrators, even though the remedial process created by Congress as against the government had afforded claimants only the belated restoration of past-due benefits. See 487 U.S. at 414, 428–29 (acknowledging that improper denial of funds that afforded "very necessities of life" could not be fully remedied by belated restoration of back benefits, but concluding that action for money damages against responsible officials, "not having been included in the elaborate remedial scheme devised by Congress, is unavailable"). Noting that the framework for protecting the rights of Social Security disability claimants was, in fact, "considerably more elaborate than the civil service system considered in Bush," id. at 425, the Court declined judicially to "revise" the policy "compromises" struck by Congress in providing a specific remedy only against the government for wrongful termination of benefits within "a massive and complex welfare

15

benefits program," id. at 429. Echoing Bush, Chilicky further acknowledged a concern with judicially recognizing claims as against individuals in addition to the congressionally authorized relief against the government: "The prospect of personal liability for official acts . . . would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress had established." Id. at 425. Accordingly, the Court left it to Congress to create such claims.

As in Bush and Chilicky, we here confront a Bivens claim that government officials violated constitutional rights when they took action—the termination of government contracts—that is the subject of an existing comprehensive remedial scheme, the CDA. Indeed, because the only retaliation alleged is termination of government contracts in response to MES's Anti-Deficiency Act complaints, the injury underlying MES's First Amendment claim is certainly cognizable—even if not fully compensable—under the CDA. See Bush v. Lucas, 462 U.S. at 388; Schweiker v. Chilicky, 487 U.S. at 427 (noting that Bush neither distinguished "between compensation for a 'constitutional wrong' and the restoration of statutory rights that had been unconstitutionally taken away" nor "suggest[ed] that such labels would matter").[2] Further, any harm to MES resulting from defendants'

---

[2] In its ASBCA complaints, MES alleged facts similar to those undergirding its First Amendment claim, i.e., that the Corps breached the parties' contracts by requiring MES to perform additional unfunded work, prompting MES to complain and seek adjustments. Insofar as Makhoul conclusorily asserted in opposition to dismissal that, even before MES was awarded the Arsenal contracts, he voiced concerns about the Corps's violation of the Anti-Deficiency Act to "just about anyone who would listen," Makhoul Decl. ¶ 8, the only retaliation alleged against MES remains the contract terminations, for which relief is afforded by the CDA.

16

alleged violations of due process in terminating the Arsenal contracts cannot realistically be separated from the harm to its statutorily vindicable rights.  See Schweiker v. Chilicky, 487 U.S. at 427–28; see also Evers v. Astrue, 536 F.3d at 659 (holding Bivens claim that defendants "'pinned a badge of infamy' upon [plaintiff] by the mere fact of terminating his contract" to be "essentially contractual" and thus fall within CDA (emphasis in original)).

These circumstances prompt us to conclude that it would be "inappropriate" to supplement the CDA's remedial scheme with a new judicial remedy for alleged constitutional violations relating to the termination of federal government contracts.  Bush v. Lucas, 462 U.S. at 388.  Rather, we defer to Congress, mindful that it is in a better position than are the courts to decide whether the public interest would best be served by the creation of "a new species of litigation."  Id. at 389.

As we note at the outset of this opinion, our conclusion finds support in the decisions of other courts refusing to recognize Bivens claims in circumstances governed by the CDA.  See Evers v. Astrue, 536 F.3d at 657 [7th Cir.]; Janicki Logging Co. v. Mateer, 42 F.3d at 564–65 [9th Cir.]; Aryai v. Forfeiture Support Assocs., LLC, 2012 U.S. Dist. LEXIS 125227, at *55 [S.D.N.Y.]; Kesler Enters., Inc. v U.S. Dep't of Agric., 2010 WL 4641360, at *5–6 [D. Idaho]; Research Air, Inc. v. Norton, 2006 WL 508341, at *8 n.8 [D.D.C.]; Teel v. DiLeonardi, 1999 WL 133997, at *3 [N.D. Ill.]; Information Sys. & Networks Corp. v. U.S. Dep't of HHS, 970 F. Supp. at 10 [D.D.C.]; Advanced Materials, Inc. v. Burgess, 1995 WL 25891, at *2 [E.D. La.], aff'd, 95 F.3d 47 [5th Cir.].

17

Nor is a different result warranted by Hartman v. Moore, 547 U.S. 250 (2006), upon which MES relies. There, the Supreme Court reiterated the general availability of a Bivens action to sue federal officials for First Amendment retaliation. See id. at 258–59. But the Court had no occasion in Hartman to consider the question of whether the CDA's remedial scheme foreclosed a Bivens claim for retaliatory termination of a government contract, because the retaliation there at issue was a criminal prosecution following a company's failed attempt to secure such a contract. See id. at 253. The CDA provides no relief with respect to the latter; by contrast, it comprehensively addresses the former. Thus, Bush v. Lucas, rather than Hartman, is the relevant precedent.[3]

The same conclusion obtains with respect to MES's reliance on Davis v. Passman, 442 U.S. 228 (1979), a case that extended Bivens to Fifth Amendment due process claims. As we have observed, Davis so ruled in the specific context of an employment discrimination claim. See Arar v. Ashcroft, 585 F.3d at 571. Since Davis, the Supreme Court has itself acknowledged that "a Bivens action alleging a violation of the Due Process Clause of the Fifth Amendment may be appropriate in some contexts, but not in others." FDIC v. Meyer,

---

[3] MES also invokes Navab-Safavi v. Broadcasting Board of Governors, 650 F. Supp. 2d 40 (D.D.C. 2009), to support its Bivens First Amendment claim. There, a translator alleged that her government contract was terminated in retaliation for her participation, outside of work, in an Internet music video protesting the United States' military involvement in Iraq. See id. at 46. The district court concluded that the claim fell outside of the CDA because it was not even arguably related to performance of the plaintiff's translation contract with the government. See id. at 68–69. We need not here decide whether we agree with the district court's view of the CDA in the particular circumstances of Navab-Safavi because, even if we did, MES's claims remain dissimilar in that they relate directly and exclusively to the performance of its government contracts.

18

510 U.S. 471, 484 n.9 (1994).  The paradigmatic context in which a <u>Bivens</u> claim is not appropriate is where Congress has provided a comprehensive scheme for addressing the actions at issue.  <u>See</u> <u>Schweiker v. Chilicky</u>, 487 U.S. at 429.  That is this case.

Indeed, the very contracts at issue here incorporated the CDA by reference as the means for resolving disputes between the parties.  Moreover, MES initially complied with the CDA in pursuing appeals with the ASBCA to undo the challenged terminations.  MES abandoned those appeals not because the CDA failed to afford meaningful relief but because its surety sought to exert control over the appeals and to claim any proceeds realized therefrom.  In these circumstances, as the Ninth Circuit has observed, "there [i]s neither need nor reason" to supplement a carefully crafted statutory scheme with a <u>Bivens</u> remedy. <u>Janicki Logging Co. v. Mateer</u>, 42 F.3d at 565–66 (reaching conclusion where plaintiff had entered into "contract which was expressly made subject to the CDA" and had initially brought CDA action that was ruled time-barred).

Accordingly, we conclude that MES's <u>Bivens</u> claims are precluded by the CDA and, thus, were correctly dismissed by the district court.

## III.  Conclusion

To summarize, we conclude that, in enacting the Contract Disputes Act of 1978, Congress created a comprehensive scheme for securing relief from the United States for any disputes pertaining to federal contracts.  The existence of that statutory scheme precludes MES from pursuing <u>Bivens</u> claims against federal employees in their individual capacities

for alleged violations of due process or the First Amendment in terminating MES's federal construction contracts with the U.S. Army Corps of Engineers.

The judgment of the district court dismissing the action is AFFIRMED.