In re Motors Liquidation Co.: Those Certain Post-Closing Accident Plaintiffs

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2019

NO. 18-1940

IN RE MOTORS LIQUIDATION COMPANY, FKA GENERAL MOTORS CORPORATION,
*DEBTOR*

THOSE CERTAIN POST-CLOSING ACCIDENT PLAINTIFFS
REPRESENTED BY BUTLER WOOTEN & PEAK LLP, DENNEY & BARRETT, P.C.,
HILLIARD MARTINEZ GONZALES L.L.P., AND TURNER & ASSOCIATES, P.A,
*ADR PROVIDER - APPELLANTS*,

JENNIFER LANKFORD,
*PLAINTIFF*,

*V.*

GENERAL MOTORS LLC,
*APPELLEE*.

ARGUED: SEPTEMBER 24, 2019
DECIDED: NOVEMBER 19, 2019

BEFORE:     JACOBS, SACK, HALL, CIRCUIT JUDGES.

Certain Post-Closing Accident Plaintiffs appeal from a judgment of the United States District Court for the Southern District of New York (Furman, J.) affirming the decision of the bankruptcy court (Glenn, J.) on the issue of punitive damages.  Because General Motors LLC did not contractually assume liability for punitive damages in its predecessor's bankruptcy sale, Post-Closing Accident

Plaintiffs may not assert claims for punitive damages based on the predecessor's conduct. Accordingly, we AFFIRM.

GREGORY W. FOX, WILLIAM P. WEINTRAUB (ON THE BRIEF), GOODWIN PROCTER LLP, NEW YORK, NEW YORK, FOR APPELLANTS.

RICHARD C. GODFREY, ANDREW B. BLOOMER (ON THE BRIEF), KIRKLAND & ELLIS LLP, CHICAGO, ILLINOIS; ERIN E. MURPHY, C. HARKER RHODES IV (ON THE BRIEF), KIRKLAND & ELLIS LLP, WASHINGTON, DISTRICT OF COLUMBIA; ARTHUR J. STEINBERG, DAVID M. FINE, SCOTT I. DAVIDSON (ON THE BRIEF), KING & SPALDING LLP, NEW YORK, NEW YORK, FOR APPELLEES.

DENNIS JACOBS, Circuit Judge:

The history of this sprawling bankruptcy is set forth in several opinions, including the comprehensive opinion of the United States Bankruptcy Court for the Southern District of New York (Glenn, J.), which was reviewed and affirmed in relevant part by the district court (Furman, J.) in the judgment from which this appeal is taken. In a nutshell, the 2009 bankruptcy of General Motors Company ("Old GM") resulted in a sale under 11 U.S.C. § 363 of the bulk of its assets to a new entity that has continued the business (the "Sale"). That new entity became General Motors LLC ("New GM").

1

There is a single question on this appeal. New GM assumed the liability of Old GM with respect to post-Sale accidents involving automobiles manufactured by Old GM; the claims thus assumed include those by persons who did not transact business with Old GM, such as individuals who never owned Old GM vehicles (but collided with one) and (hypothetical) persons who bought Old GM cars used after the Sale. The question on appeal is whether New GM is liable for punitive damages with respect to such claims. We conclude, as a matter of contract interpretation, that New GM is not.

The bankruptcy court ruled New GM cannot be held liable for punitive damages based on Old GM's conduct for two reasons: an earlier decision by the bankruptcy court had resolved this issue and was the law of the case; and the structure of the Bankruptcy Code's priority scheme precludes successor liability punitive damages claims in this case. See In re Motors Liquidation Co. ("July 2017 Decision"), 571 B.R. 565, 575-77 (Bankr. S.D.N.Y. 2017). The district court affirmed on the same grounds. See In re Motors Liquidation Co. ("May 2018 Decision"), 590 B.R. 39, 61-64 (S.D.N.Y. 2018).

This appeal was initiated by certain Post-Closing Accident Plaintiffs represented by multiple law firms ("Appellants"). "Post-Closing Accident

Plaintiffs" is a term of art in these bankruptcy proceedings; it means plaintiffs asserting claims based on an accident or incident that occurred on or after the closing date of the Sale. July 2017 Decision, 571 B.R. at 578. Since filing the Notice of Appeal, some of the Appellants have settled their lawsuits against New GM or decided not to pursue this appeal. For res judicata purposes, it matters that the remaining Appellants are the plaintiffs in Eason v. General Motors LLC ("Eason"), Case No. 15A-1940-7 (State Court of Cobb County, Ga.). (The disposition of the case involving the plaintiff in Reichwaldt v. General Motors LLC, Case No. 1:16-cv-02171 (N.D. Ga.) is addressed in a summary order that is issued on the same day as this opinion.)

To confirm appellate jurisdiction, we consider the Notice of Appeal and conclude that it is (barely) adequate (Part I). We then consider the merits: contractual assumption (Part II) and successor liability (Part III). Because New GM did not contractually assume liability for punitive damages, the judgment is affirmed.

**BACKGROUND**

In 2009, Old GM filed for bankruptcy under chapter 11, and took steps under 11 U.S.C. § 363(f) to sell substantially all of its assets, "free and clear" of any associated liabilities, to (the entity that later became) New GM. The terms of the Sale are governed by a contract (the "Sale Agreement"), under which New GM assumed a narrow set of Old GM's liabilities (the "Assumed Liabilities"). All other liabilities remained with Old GM.

Prior to the Sale, interested parties and the general public received notice of a proposed Sale Agreement; and the bankruptcy court received and considered hundreds of objections. In response to some objections, the parties amended the Sale Agreement for New GM's Assumed Liabilities to include claims arising out of post-Sale car accidents involving Old GM vehicles. Having received the objections and amendments, the bankruptcy court entered an order on July 5, 2009 approving the terms of the Sale Agreement (the "Sale Order"). In re General Motors Corp., 407 B.R. 463 (Bankr. S.D.N.Y. 2009) (Gerber, J.).

Between February 2014 and October 2014, New GM recalled certain Old GM vehicles with alleged defects that could (among other things) disable critical safety features. The recalls prompted numerous lawsuits against

New GM, including those seeking punitive damages based on Old GM's design, manufacture, and sale of the defective vehicles. In response to these lawsuits, New GM moved in the bankruptcy court to enforce the "free and clear" provision of the Sale Order that, in accordance with 11 U.S.C. § 363(f), extinguishes all liability arising out of Old GM assets other than Assumed Liabilities.

Since the 2014 recalls, many questions have arisen about the breadth of the Sale Order's free and clear provision and the scope of the Sale Agreement's Assumed Liabilities. In November 2015, the bankruptcy court resolved some questions bearing on which claims could proceed against New GM. See In re Motors Liquidation Co. ("November 2015 Decision"), 541 B.R. 104 (Bankr. S.D.N.Y. 2015) (Gerber, J.). Relevant to this appeal, the court considered the extent to which punitive damages are available to Post-Closing Accident Plaintiffs, and concluded that under the Sale Agreement, New GM could not be liable for punitive damages imposed by reason of Old GM's conduct. Id. at 116-21. This ruling was never appealed.

In July 2017, the bankruptcy court undertook to resolve persistent issues arising out of the Sale. Among the claimants were the Appellants, who argued

5

that they were not bound by the November 2015 Decision (on the punitive damages issue) because they were not yet party to the bankruptcy court proceedings. The bankruptcy court applied the November 2015 Decision as the law of the case and ruled that "New GM cannot be held liable for punitive damages on a contractual basis." July 2017 Decision, 571 B.R. at 576. The court went on to consider whether the Sale Order's free and clear provision could bar the punitive damages claims of Appellants, who suffered post-Sale injuries. Id. at 576-77. The court observed that, since Old GM was deeply insolvent at the time of the Sale, the structure of the Bankruptcy Code's claim priority scheme would insulate Old GM from having to pay punitive damages. Id. at 580 (citing 11 U.S.C. 726(a)(4)). The court therefore concluded that New GM could not be held liable as a successor corporation for claims that its predecessor would never have paid. Id. at 579-80.

Pursuant to 28 U.S.C. § 158, the district court reviewed the July 2017 Decision and affirmed on both grounds. May 2018 Decision, 590 B.R. at 61-64. This appeal followed.

**DISCUSSION**

"We exercise plenary review over a district court's affirmance of a bankruptcy court's decisions, reviewing de novo the bankruptcy court's conclusions of law, and reviewing its findings of facts for clear error." Matter of MPM Silicones, L.L.C., 874 F.3d 787, 794 (2d Cir. 2017) (internal quotation marks omitted) (quoting In re Lehman Bros., Inc., 808 F.3d 942, 946 (2d Cir. 2015)).

**I**

There is an issue at the outset as to the sufficiency of the Notice of Appeal. New GM argues that appellate jurisdiction is lacking because the Notice of Appeal fails to "specify the party or parties taking the appeal by naming each one in the caption or body of the notice." Fed. R. App. P. 3(c)(1)(A). This specification requirement is jurisdictional. Gusler v. City of Long Beach, 700 F.3d 646, 648 (2d Cir. 2012). Here, the Notice of Appeal identifies as Appellants "those certain Post-Closing Accident Plaintiffs represented by Butler Wooten & Peak LLP, Denney & Barrett, P.C., Hilliard Martinez Gonzales L.L.P., and Turner & Associates, P.A."

A notice of appeal must "provide notice both to the opposition and to the court of the identity of the appellant or appellants." Torres v. Oakland Scavenger Co., 487 U.S. 312, 318 (1988). In Torres, the Supreme Court ruled insufficient a notice of appeal utilizing an "et al." designation rather than listing each plaintiff by name; but Congress relaxed that requirement in an amendment to the Federal Rules of Appellate Procedure. Now, a notice of appeal need not list every appellant; "such terms as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X'" are acceptable. Fed. R. App. P. 3(c)(1)(A). If there is a "failure to name a party whose intent to appeal is otherwise clear from the notice," the appeal must not be dismissed. Id. 3(c)(4). In general, this Court liberally construes the requirements of Rule 3. See, e.g., PHL Variable Ins. Co. v. Town of Oyster Bay, 929 F.3d 79, 87 (2d Cir. 2019).

It was careless of counsel on this appeal to file a notice on behalf of "certain Post-Closing Accident Plaintiffs" represented by named law firms. The Post-Closing Accident Plaintiffs differ in circumstance, and the date on which they joined the bankruptcy court proceedings matters in deciding whether res judicata bars a challenge to the November 2015 Decision. See Section II.A, infra. Although Appellants identified themselves in subsequent submissions and oral

statements to the Court, these clarifications cannot cure a deficiency in a notice of appeal.

Nevertheless, under a liberal construction of the Rule 3 requirements, we conclude the Notice of Appeal is adequate. It is not so deficient as those in prior appeals that were dismissed for lack of jurisdiction. See, e.g., M.E.S., Inc. v. Snell, 712 F.3d 666, 668 (2d Cir. 2013) (finding no jurisdiction to review claim advanced by individual who was entirely absent from the original timely notice of appeal); Gusler, 700 F.3d at 648-50 (dismissing appeal in which only a non-party was named in the body of the notice). Here, it is sufficiently clear to the parties and ascertainable to the court (with effort) to identify Appellants by the law firms listed in the notice. New GM has identified Appellants by law firm in the bankruptcy court proceedings. Therefore, there is no insurmountable impediment to our jurisdiction. At the same time, notwithstanding the Court's obligation to ascertain our jurisdiction, it is not our task to conduct a review of the bankruptcy court docket. Counsel expecting us to do so proceed at peril.

In summary, even if the plaintiffs in Eason are not expressly named in the notice, their intent to appeal is otherwise clear by reference to the law firm representing them. Accordingly, we have jurisdiction over this appeal.

A second threshold question is whether res judicata bars the Court from reaching the issue of whether New GM assumed liability for punitive damages as a matter of contract.

## A.    Res Judicata

In November 2015, the bankruptcy court ruled that claims for punitive damages are not part of New GM's Assumed Liabilities in the Sale Agreement. November 2015 Decision, 541 B.R. at 116-21.  This decision was never appealed. Now, New GM claims that the doctrine of res judicata bars Appellants from challenging the reasoning in that decision, which the bankruptcy court applied as the law of the case in July 2017.

"To determine whether the doctrine of res judicata bars a subsequent action, we consider whether (1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same."  Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks omitted) (quoting In re Layo, 460 F.3d 289, 292 (2d Cir. 2006)). "The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on

the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)).

Of the four considerations, the only one contested is whether Appellants were parties to the bankruptcy proceedings prior to the November 2015 Decision. New GM asserts that even if Appellants did not participate in the briefing leading to the November 2015 Decision, they were a part of the larger bankruptcy litigation at that time and are thereby bound by their failure to appeal that ruling. We disagree.

The only remaining Appellants are the plaintiffs in Eason, who initiated their lawsuit on August 12, 2015. Several weeks later, the bankruptcy court issued a scheduling order specifying open issues that were later addressed in the November 2015 Decision and setting a briefing schedule. However, this order was not served on the plaintiffs in Eason. Appellants apparently were not brought into the bankruptcy court proceedings until after the November 2015 Decision. (That is reasonably clear though not free from doubt.[1]) Therefore, the

---

[1] On June 20, 2016, counsel for Appellants told the bankruptcy court that New GM had not served a motion to enforce the Sale Order on the plaintiffs in

doctrine of res judicata does not bar them from challenging the bankruptcy court's application of the November 2015 Decision as the law of the case in the July 2017 Decision.

### B.  Contractual Assumption of Punitive Damages

"When interpreting a contract under New York law, our 'primary objective is to give effect to the intent of the parties as revealed by the language of their agreement.'" Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., 773 F.3d 110, 113-14 (2d Cir. 2014) (quoting Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 157 (2d Cir. 2000)).[2] "The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." Id. at 114 (internal quotation marks omitted) (quoting Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012)). "If an ambiguity is found, 'the court may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract.'" Int'l Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 83

---

Eason.  This statement leads us to conclude that Appellants did not join the bankruptcy proceedings until sometime after June 2016.

[2] The Sale Agreement contains a New York choice-of-law clause.

12

(2d Cir. 2002) (quoting <u>Morgan Stanley Group Inc. v. New Eng. Ins. Co.</u>, 225 F.3d

270, 275-76 (2d Cir. 2000)).

At issue is Section 2.3(a)(ix) of the Sale Agreement (re-formatted below),

which provides that New GM has assumed:

| | |
|---|---|
| [1] | all Liabilities |
| [2] | to third parties |
| [3] | for death, personal injury, or other injury to Persons . . . caused by motor vehicles designed for operation on public roadways . . . |
| [4] | and, in each case, manufactured, sold or delivered by [Old GM] (collectively, "Product Liabilities"), |
| [5] | which arise directly out of death, personal injury or other injury to Persons . . . caused by accidents or incidents first occurring on or after the Closing Date and arising from such motor vehicles' operation or performance . . . . |

J.A. 184. "Liabilities" is expansively defined as "any and all liabilities and

obligations of every kind and description whatsoever, whether such liabilities or

obligations are known or unknown, disclosed or undisclosed, matured or

unmatured, accrued, fixed, absolute, contingent, determined or undeterminable,

on or off-balance sheet or otherwise, or due or to become due, including

Indebtedness and those arising under any Law, Claim, Order, Contract or

otherwise." J.A. 88.

Appellants read Section 2.3(a)(ix) reductively to mean that New GM

assumed "all Liabilities," including "all liabilities and obligations of every kind

and description whatsoever," and thereby assumed claims for punitive damages. However, the bankruptcy court soundly observed that "the phrase 'all Liabilities' does not exist alone." November 2015 Decision, 541 B.R. at 119.

Reading Section 2.3(a)(ix) phrases [1], [3], and [5] together, New GM's assumption of "all Liabilities" is limited to those that (1) are "*for*" death and injuries and those that (2) "*arise directly out of*" death and injuries. It is clear that punitive damages are not paid "for" death and injuries. Rather, they are paid to punish "egregious, reprehensible behavior." Virgilio v. City of New York, 407 F.3d 105, 116 (2d Cir. 2005). Damages "for" death and injuries are compensatory.

Likewise, claims for punitive damages do not "arise directly out of" death and injuries. If reprehensible conduct--such as careless automobile design--led to an accident that caused an injury, a claim for punitive damages to punish that conduct does not arise directly out of the injury. Arguably, the claim might be said to arise out of the injury indirectly. Most accurately, the claim for punitive damages does not arise out of the injury at all.

Appellants next assert that because the Sale Agreement does not expressly carve out punitive damages in Section 2.3(a)(ix), New GM must have contractually assumed them as Liabilities. However, this argument neglects

14

other provisions of the Sale Agreement demonstrating that the enumerations in Section 2.3(a) are exclusive. Section 2.3(b), in defining Old GM's "Retained Liabilities," provides that New GM "shall not assume, or become liable to pay, perform or discharge, any Liability of [Old GM] . . . other than the Assumed Liabilities." J.A. 107. And Section 2.3(a) provides that New GM's "Assumed Liabilities shall consist *only* of the following Liabilities" defined in subsections (i)-(xv). J.A. 105 (emphasis added). Punitive damages are not among those defined categories. Under these provisions, the default rule is that unless the Sale Agreement states that New GM assumed a Liability, the Liability remained with Old GM. There was therefore no need to expressly carve out punitive damages in Section 2.3(a)(ix).

Even if Section 2.3(a)(ix) is deemed ambiguous as to whether New GM assumed Liabilities for punitive damages, the extrinsic evidence confirms that New GM did not. In 2015, the bankruptcy court made the following factual findings (inter alia):

- New GM assumed Old GM's obligations "only to the extent commercially necessary."

- Section 2.3(a)(ix) was amended in response to concern voiced by

15

state Attorneys General and others that it would be unfair to deprive future claimants of their rights to bring claims arising out of post-Sale accidents. However, those objectors "never asked [the bankruptcy court] to require New GM to assume anything more than compensatory damages, and in none of those submissions was punitive damages mentioned."

November 2015 Decision, 541 B.R. at 119-20. Appellants offer no convincing reason why it was commercially advantageous for New GM to contractually assume claims for punitive damages. Nor do they account for the telling fact that, when Section 2.3(a)(ix) was amended, nobody appears to have contemplated New GM assuming Liabilities for punitive damages. Furthermore, as the bankruptcy court observed, the idea that New GM would silently choose to assume inestimable millions of dollars in punitive damages "is entirely implausible." Id. at 120.

Accordingly, the terms of the Sale Agreement reflect--and extrinsic evidence confirms--that New GM did not contractually assume claims for punitive damages based on Old GM's conduct.

16

## III

Appellants argue that even if Old GM's liabilities for punitive damages were not contractually assumed, New GM must pay them under the theory of successor liability. This argument misjudges the scope of the Sale Order's free and clear provision.

The Sale Order provides that "[e]xcept for the Assumed Liabilities" in the Sale Agreement, the assets acquired by New GM "shall be free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . including rights or claims based on any successor or transferee liability." J.A. 42. Nevertheless, Appellants argue that under Second Circuit law, this provision cannot bar their punitive damages claims because they had no relationship with Old GM at the time of the Sale:

> [A] bankruptcy court may approve a § 363 sale "free and clear" of successor liability claims if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim. *Further, there must be some contact or relationship between the debtor and the claimant such that the claimant is identifiable.*

In re Motors Liquidation Co., 829 F.3d 135, 156 (2d Cir. 2016) (emphasis added).

Appellants emphasize that they did not own an Old GM car at the time of the

17

Sale, that they had no pre-Sale relationship with Old GM, and that they therefore were not identifiable when the Sale Order was entered.

In our 2016 decision, the issue was whether a bankruptcy court may approve a sale "free and clear" of claims if those claims arose from pre-petition conduct that had not resulted in "detectable injury" at the time of the bankruptcy sale, but that might lead to a "tortious" injury after the sale. Id. at 154-56. That has no bearing on punitive damages: a punitive damages claim is not a tort claim; it does not compensate for a "tortious" injury; and there is no "detectable injury." Moreover, any alleged egregious act committed by Old GM that might justify punitive damages was over and done by the time of the Sale Order. Therefore, such claims are subject to the Sale Order's successor liability bar.

* * *

The district court and bankruptcy court did not address whether the scope of the Sale Order could preclude Appellants' punitive damages claims. Instead, those courts concluded that because Old GM was insolvent, the structure of the federal Bankruptcy Code's priority scheme precluded punitive damages claims against New GM. See May 2018 Decision, 590 B.R. at 63; July 2017 Decision, 571 B.R. at 579-80.

18

We need not decide whether the Bankruptcy Code's priority scheme precludes liability for punitive damages in the case of an insolvent debtor such as Old GM. Here, punitive damages are not an Assumed Liability in the Sale Agreement, and the Sale Order's free and clear provision bars punitive damages claims under a theory of successor liability. These conclusions are sufficient for us to rule that Appellants may not seek punitive damages against New GM based on Old GM's conduct.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.