**UP STATE FEDERAL CREDIT UNION, 1916 Black River Blvd., Rome, NY, Plaintiff–Appellant,**

v.

**Robert M. WALKER, as Acting Secretary of the Army of the United States of America, Defendant–Appellee.**

Docket No. 99–6061

United States Court of Appeals, Second Circuit.

Argued: Nov. 10, 1999

Decided: Dec. 23, 1999

John A. Nasto, Jr., Rome, NY, for plaintiff-appellant.

Charles Roberts, Assistant United States Attorney, Syracuse, N.Y. (Daniel J. French, United States Attorney for the Northern District of New York, on the brief) for defendant-appellee.

Before: CARDAMONE, SOTOMAYOR, and KATZMANN, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Up State Federal Credit Union ("the Credit Union") brings this appeal claiming that the district court erred in dismissing its action against defendant-appellee, the United States Army ("the Army") for lack of subject matter jurisdiction. We agree with the district court that the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994 & Supp.1999) (as amended by the Tucker Act, 28 U.S.C. §§ 1346(a)(2) & 1491 (1994 & Supp.1999)),[1] provides the sole basis for jurisdiction for this action because the Credit Union's claim essentially arises from a contract with the Army. Accordingly, jurisdiction resides exclusively in the Court of Federal Claims. We write only to address the narrow issue of when a claim against the government "at its essence" arises from a contract.

## BACKGROUND

The Credit Union alleges the following facts, which on a motion to dismiss we take as true. In 1989, the Army and the Up State Federal Credit Union agreed that the credit union would furnish services to the troops stationed at Fort Drum in LeRay, New York. The parties entered into an agreement authorizing the Credit Union to construct, own and operate a building for this purpose on a 2.9–acre plot of Fort Drum land. Once the building was substantially completed, the Army directed the Credit Union to obtain a building permit and certificate of occupancy from the town of LeRay. The Credit Union objected, on the ground that if it were required to obtain the requested documentation from the town of LeRay, the Credit Union would become liable for payment of local property taxes. The Credit Union also took the position that, had it been aware of this requirement prior to starting construction, it might have modified the scope of its project in order to minimize its tax liability.

After protracted negotiations, the Army agreed that if the Credit Union obtained the requested documentation, the Army would enter into a one-year land lease with the Credit Union, pursuant to which the Credit Union would own the building and

---

1. Under 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has jurisdiction over "any claim against the United States founded ... upon ... any express or implied contract with the United States...." According to 28 U.S.C. § 1346(a)(2), however, district courts have "original jurisdiction, concurrent with the United States Court of Federal Claims, of ... [a]ny ... civil action or claim against the United States, not exceeding $10,000 in amount, founded ... upon any express or implied contract with the United States." This provision of 28 U.S.C. § 1346(a)(2) is inapplicable to this case because, as the Credit Union concedes, its claim is for more than $10,000.

lease the land from the Army. According to the Credit Union, the Army also pledged that 1) it would take title to the building at the end of the one-year land lease; and 2) pursuant to Army Regulation 210–135, it would give the Credit Union first choice at that time to continue occupying the building under a facility lease.[2] At the end of the one-year land lease term, therefore, the Credit Union would no longer own the building but would merely lease it from the Army in order to continue offering credit union services at Fort Drum.

The one-year land lease commenced on August 30, 1991, and ended on August 29, 1992. During this period, the Credit Union obtained the requested building permit and certificate of occupancy from the town and paid real property taxes to it. When the term of the land lease expired, the Army did not take title to the building as it had allegedly promised, but rather asked the Credit Union to renew its lease for the land. The Credit Union refused, asserting that the Army had agreed to take title to the building and thereafter lease the building to the Credit Union under a facility lease. The parties failed to reach an agreement regarding title to the building or the lease of the land and building, and the Army subsequently served the Credit Union with a notice to vacate the premises as of April 30, 1997.

On January 28, 1998, the Credit Union brought this action seeking an injunction directing the Army to execute the facility lease for the building, a declaratory judgment that the Army is the title owner of the building, reimbursement for legal fees and real property taxes the Credit Union paid, and substantial monetary damages, of which $20 million would serve as an alternative to equitable relief. The Army moved to dismiss the complaint for lack of subject matter jurisdiction, asserting that because the Credit Union was seeking spe-

cific performance of a contract with the United States, jurisdiction over the action rested exclusively in the Court of Federal Claims. On February 8, 1999, the United States District Court for the Northern District of New York (Howard G. Munson, *Senior Judge* ) granted the Army's motion to dismiss. The Credit Union now appeals.

## DISCUSSION

■ On an appeal from an order granting a motion to dismiss, we review the district court's factual findings for clear error and its legal conclusions *de novo.* *See Woodward Governor Co. v. Curtiss–Wright Flight Sys., Inc.,* 164 F.3d 123, 126 (2d Cir.1999). It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (citing *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). Accordingly, to establish the jurisdiction of the district court in this case, the Credit Union must demonstrate that the government has waived its immunity to suit in district court with respect to the claims asserted here.

The court below found that the sole waiver of sovereign immunity in this case lies in the Contract Disputes Act (as amended by the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491) ("the CDA"). *See Up State Federal Credit Union v. Walker,* 35 F.Supp.2d 222, 224 (N.D.N.Y.1999). The CDA waives sovereign immunity for contract disputes with the government and gives the Court of Federal Claims exclusive jurisdiction over such actions. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). Because this case involves a contract with the government, the district court concluded that the Court of Federal Claims has exclusive

---

**2.** At oral argument, counsel for the Army advised the Court that the Army intends to defend this action in the Court of Federal

Claims by challenging the validity of the lease agreement and the authority of the agent who signed the agreement.

jurisdiction over the dispute. The Credit Union, however, characterizes the case not as a contract dispute but rather as a challenge under § 702 of the Administrative Procedure Act ("the APA"), 5 U.S.C. § 702 (1994), which permits a party to bring an equitable claim challenging arbitrary and capricious action of an administrative agency in federal district court and waives the government's sovereign immunity with respect to such claims in that forum.[3] The Credit Union argues that because its claim alleges an agency's "failure of integrity and regularity of process" under the APA rather than a breach of contract claim under the CDA, the district court had subject matter jurisdiction over this suit.[4]

■ While the APA does create a general waiver of sovereign immunity as to equitable claims against government agencies, "nothing in the APA 'confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Presidential Gardens*, 175 F.3d at 143 (quoting 5 U.S.C. § 702). The Tucker Act "'impliedly forbids'" relief other than remedies provided by the Court of Federal Claims for actions that "arise[ ] out of a contract" with the United States. *Id.* (quoting *Estate of Watson v. Blumenthal*, 586 F.2d 925, 933–34 (2d Cir.1978)). Accordingly, if the Credit Union's claim "arises out of a contract," *id.*, the Court of

Claims has exclusive jurisdiction over the action.

The District of Columbia Circuit has developed a useful analysis for distinguishing contract claims from challenges to agency action. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C.Cir.1982); *see also A & S Council Oil Co. v. Lader*, 56 F.3d 234, 240 (D.C.Cir.1995) (citing *Megapulse*, 672 F.2d at 959); *Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 76–77 (D.C.Cir.1985) (same); *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 893 (D.C.Cir.1985) (same). In *Megapulse*, the court held that the determination of whether an action is "'at its essence' a contract action [for purposes of sovereign immunity under the Tucker Act] depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought...." 672 F.2d at 968. The dispute in *Megapulse* arose when the plaintiff, a government contractor, sought to enjoin the release of certain technical data it had given to the Coast Guard pursuant to a sale of navigational equipment, on the ground that such a release would deprive the contractor of its property without due process of law and would violate the federal Trade Secrets Act, 18 U.S.C. § 1905 (1994). *See Megapulse*, 672 F.2d at 961–63. Concluding that district court properly exercised

---

**3.** 5 U.S.C. § 702 provides, in relevant part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States....

**4.** The Credit Union could invoke jurisdiction under 28 U.S.C. § 1331 (1994), because "contracts with the government are governed by federal common law, and ... subject matter jurisdiction under section 1331 thus exists over causes of action arising from contracts to which the government is a party." *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 n. 4 (2d Cir.1985) (citations omitted); *cf. Boyle v. United Tech. Corp.*, 487 U.S. 500, 504, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) (noting that "obligations to and rights of the United States under its contracts are governed exclusively by federal law"). A showing of federal question jurisdiction, however, does not relieve the Credit Union of its burden to establish a waiver of sovereign immunity. As noted, the United States has waived immunity for contract claims only if presented in the Court of Federal Claims.

jurisdiction, the Court of Appeals found that the source of the contractor's rights was "ultimately based, not on breach of contract, but on an alleged governmental infringement of property rights and violation of the Trade Secrets Act." *Id.* at 969. Moreover, the injunctive relief the plaintiff sought arose from the Trade Secrets Act and not from the contract between the parties. *See id.* at 971 ("[T]he mere fact that an injunction would require the same governmental restraint that specific [ ]performance might require in a contract setting is an insufficient basis to deny a district court the jurisdiction otherwise available...."). The court thus held that the APA waived sovereign immunity and subjected the defendant to district court jurisdiction because the contractor had demonstrated a non-contractual source for its rights and requested remedies. *See id.*

At least two other circuits have adopted the "rights and remedies" analysis of *Megapulse.* In *United States v. J & E Salvage Co.,* 55 F.3d 985 (4th Cir.1995), the Fourth Circuit, citing *Megapulse,* found exclusive Court of Claims jurisdiction where the plaintiff's claim arose from an alleged failure to comply with a bill of sale and where the principal remedy sought— recission of the sale—sounded wholly in contract. *See id.* at 988–89. Similarly, in *North Star Alaska v. United States,* 14 F.3d 36 (9th Cir.1994), the Ninth Circuit relied on *Megapulse* to find exclusive Court of Claims jurisdiction where the action involved a determination of the original intent of the contracting parties. *See id.* at 37–38 (" 'The classification of a particular action as one which is or is not "at its essence" a contract action depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought ....' ") (quoting *Megapulse,* 672 F.2d at 968); *see also Manshul Constr. Corp. v. United States,* 687 F.Supp. 60, 62 (E.D.N.Y.1988) (distinguishing the rights in *Megapulse,* which arose out of an independent statute, from ordinary contractual rights); *J.C. Prods., Inc.,*

*v. United States,* 608 F.Supp. 92, 96 (W.D.Mich.1984) ("The *Megapulse* court was itself careful to re-emphasize that an action against the United States, which at its essence is a contract claim, must be adjudicated in the Court of Claims."); *cf. Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 892 (6th Cir.1998) (citing *A & S Council* to support its conclusion that a quantum meruit claim essentially arose from contract); *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 728 (2d Cir. 1983) (agreeing with the analysis in *Megapulse* for purposes of identifying a " 'disguised' claim for specific performance of a contract.").

Moreover, the two-pronged formulation of *Megapulse,* which examines both the source of the rights at issue and the nature of the remedy sought, builds logically on the analysis this Circuit has developed to assess jurisdiction in the related context of the government contracts process. In *Chemung County v. Dole,* 781 F.2d 963 (2d Cir.1986), we considered whether the district court had jurisdiction under the APA to enjoin the Federal Aviation Administration from reopening the competition for a government contract. *See id.* at 964. *Chemung* focused largely on the type of remedy sought: because the plaintiff requested an injunction "to enforce the regularity of the bidding process," rather than "damages or specific performance of [a] contract," the district court had jurisdiction over the suit. *Id.* at 970. *Megapulse* expands this analysis by considering the source of the rights asserted as well as the nature of the proposed remedy in distinguishing contract claims from those grounded in the APA.

■  Applying the analysis from *Megapulse* to this case, it is clear that the Credit Union's claim arises from contract. Unlike the plaintiff's proprietary rights in *Megapulse,* the Credit Union's right in this case stems from no independent, non-contractual source. *See Megapulse,* 672 F.2d at 969. Whereas the plaintiff's rights in *Megapulse* were grounded in the Trade Secrets Act and would have existed in the

absence of a contract, the right that the Credit Union seeks to vindicate is not "ultimately based" on anything other than the lease with the Army. *See id.; cf. Manshul Construction,* 687 F.Supp. at 62 (holding that even though plaintiff's "right" to seek recission of a contract may have been protected by statute, the right was "meaningless in the absence of a contract"); *Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 54–55 (2d Cir.1985) (holding that there was no implied cause of action under the Federal Housing Act that could provide plaintiff with a non-contractual waiver of sovereign immunity). Had the parties not entered into the agreement at issue in this case, the Credit Union could have had no possible right to transfer title in the building to the Army, or to demand that the Army grant it a facility lease for that building. In the absence of a contract with the Army, therefore, "it is likely that no cause of action would exist at all." *Id.* at 55.

The Credit Union attempts to characterize this action as an APA challenge rather than a contract dispute by arguing that Army Regulation 210–135 grants it a non-contractual right to enter into a facility lease. Army Regulation 210–135, 4–8e states: "When, *under the terms of the lease* or extension, title to improvements passes to the Government, the credit union will be given first choice to continue occupying those improvements under a facility lease." (emphasis added). By its own terms, therefore, the regulation addresses only situations in which title has passed "under the terms of the lease." The Army maintains that title to the building did not pass under the terms of the lease. Because the adjudication of this dispute requires an interpretation of the expired land lease, we conclude that the source of the right at issue here is the contract between the parties rather than Army Regulation 210–135.[5] In addition, we find that the an order directing the Army to enter into a facility lease, as requested by the Credit Union, would be analogous to a contractual remedy for specific performance because it would enforce an alleged agreement between the parties. As a result, we conclude that the CDA, as amended by the Tucker Act, provides the sole basis for waiver of sovereign immunity in this case and therefore that the Court of Federal Claims has exclusive jurisdiction over this matter.

## CONCLUSION

For the foregoing reasons, the order of the district court is affirmed, and the case is dismissed for lack of subject matter jurisdiction.

---

5. We also conclude that the Quiet Title Act, 28 U.S.C. §§ 1346(f) and 2409a (1994), does not provide the Credit Union with a non-contractual cause of action. This statute is inapplicable because the Army claims no interest in the Credit Union's building. While title to the building will pass to the Army after it evicts the Credit Union, there is no evidence that the Army presently has an interest other than leasing the land on which the building stands. Accordingly, this case lacks the adverse interest in real property that is necessary for quiet title jurisdiction. *See* 28 U.S.C. § 2409a. Furthermore, the Act, by its own terms, "does not apply to … actions which *may* be or could have been brought [in the Court of Federal Claims] under section [ ] … 1491." 28 U.S.C. § 2409a(a) (emphasis added). As we have noted above, this action may be brought in the Court of Federal Claims.