18-1713-(L)
Atterbury v. United States Marshals Service

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2019

Argued:  September 17, 2019          Decided: October 25, 2019

Docket Nos. 18-1713-cv(L); 18-2378-cv(Con)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
STEPHEN L. ATTERBURY,

            Plaintiff - Appellant,

                      v.

UNITED STATES MARSHALS SERVICE, GARY
INSLEY, CONTRACTING OFFICER, OFFICE OF
SECURITY CONTRACTS, JUDICIAL DIVISION,
UNITED STATES MARSHALS SERVICE, IN HIS
INDIVIDUAL CAPACITY, JOHN DOE, IN HIS
INDIVIDUAL CAPACITY,

            Defendants - Appellees.
_____

DANIEL F. HAUSCHILD,

            Plaintiff - Appellee,

                      v.

UNITED STATES MARSHALS SERVICE,

            Defendant - Appellant,

PATRICIA HOFFMAN, CONTRACTING OFFICER,
OFFICE OF SECURITY CONTRACTS, JUDICIAL
SECURITY DIVISION, UNITED STATES SERVICE,
IN HER INDIVIDUAL CAPACITY, JOHN DOE, IN
HIS INDIVIDUAL CAPACITY,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Before:  NEWMAN, CABRANES, LYNCH, *Circuit Judges*.

Consolidated appeals from the May 8, 2018, judgment of the District Court for the Western District of New York, granting summary judgment to the United States Marshals Service ("USMS") on the claim of Stephen L. Atterbury that he was improperly discharged as a Court Security Officer ("CSO") (No. 18–1713), and from the June 15, 2018, judgment of the District Court for the Southern District of New York granting summary judgment to Daniel F. Hauschild on his claim that he was improperly discharged as a CSO (No. 18–2378).

In No. 18–1713, we reverse and remand; in No. 18–2378, we affirm and remand.

> Joshua J. Ellison (Kate M. Swearengen, on the brief), Cohen, Weiss and Simon LLP, New York, NY, for Stephen L. Atterbury, Plaintiff-Appellant in 18-1713, and Daniel F. Hauschild, Plaintiff-Appellee in 18-2378.

Christine S. Poscablo, Asst. U.S. Atty., New York, NY (Geoffrey S. Berman, U.S. Atty. for the Southern District of New York, Benjamin H. Torrance, Asst. U.S. Atty., New York, NY, James P. Kennedy, Jr., U.S. Atty. for the Western District of New York, Michael S. Cerrone, Monica J. Richards, Asst. U.S. Attys., Buffalo, NY, on the brief), for United States Marshals Service, Gary Insley and John Doe, Defendants-Appellees in 18-1713, and United States Marshals Service, Defendant-Appellant in 18-2378.

JON O. NEWMAN, Circuit Judge:

These appeals present, in an unusual context, the issues of whether a discharged public employee working for a federal government contractor has a property interest in continued employment and, if so, whether his discharge comported with the requirements of procedural due process. The context is unusual because, as to both appeals, the property interest is claimed to arise from the contract between the employee's union and his employer, but the discharge was ordered by the government agency with which the employer has a contract.

In No. 18–1713, Stephen L. Atterbury appeals from the May 8, 2018, judgment of the District Court for the Western District of New York (Richard Arcara, District Judge) granting summary judgment to the United States Marshals

Service ("USMS") on his claim that he was improperly discharged from his position as a Court Security Officer ("CSO"). In No. 18–2378, USMS appeals from the June 15, 2018, judgment of the District Court for the Southern District of New York (Cathy Seibel, District Judge) granting summary judgment to Daniel F. Hauschild on his claim that he was improperly discharged as a CSO.

We conclude that both Atterbury and Hauschild had a property interest in their continued employment as CSOs and that their discharges did not comply with the requirements of procedural due process. We therefore reverse and remand in No. 18–1713 and affirm and remand in No. 18–2378.

## Background

*The parties and their relationships*. Stephen L. Atterbury was a CSO in the Western District of New York from 2002 until his termination in April 2011, serving at the federal courthouse in Rochester, New York. Daniel F. Hauschild was a CSO in the Southern District of New York from 1989 until his termination in Oct. 2012, serving most recently as Lead CSO at the federal courthouse in Poughkeepsie, New York. Atterbury and Hauschild (collectively, "CSOs") were employed by Akal Security, Inc. ("Akal"), a private company providing security

4

services. Akal was retained by the USMS to provide security services at federal courthouses.

The relationship between the CSOs and Akal was governed by a 2010 collective bargaining agreement ("CBA") between Akal and the United States Court Security Officers, the union representing the CSOs. The relationship between Akal and USMS was governed by a contract between them ("Akal-USMS Contract"). We consider the provisions of these documents below.

*Atterbury's alleged misconduct.* Atterbury left work early on Feb. 24, 2011, after telling his superior officer that he was going home because he felt ill. The parties dispute whether Atterbury was actually ill. Atterbury contends that he left because he felt unwell, and that he understood his superior officer's response was an indication of permission. That officer claimed that he thought Atterbury was joking. Other witnesses gave divergent accounts of whether Atterbury appeared to be sick, with some corroborating Atterbury's account and others suggesting that he did not seem ill and that he was angry due to a miscommunication about whether he needed to remain at a certain post. A U.S. Marshal, who said he witnessed Atterbury leaving, stated that Atterbury "did not appear or sound sick" but "appeared and sounded agitated and annoyed." J. App's at 22. The Marshal

reported Atterbury, and USMS directed Akal to investigate whether Atterbury had violated performance standards by abandoning his post. After interviewing several witnesses, Akal reported to USMS that its findings were consistent with Atterbury's version of events.

USMS asked Akal to reconsider, finding that Akal's investigation was insufficiently thorough because its investigator conducted only a brief, informal interview of the eyewitness marshal who had reported the incident. Akal stood by its findings, noting that USMS had not given Akal any information that contradicted its findings. Nevertheless, USMS informed Akal that it disagreed with Akal's findings, that Atterbury's actions had undermined confidence in his ability to perform his duties as a CSO, and that Atterbury should be permanently removed from performing under the Akal-USMS Contract. USMS did not identify the findings of Akal with which it disagreed or the actions of Atterbury on which USMS relied. Atterbury appealed his removal to Akal. Akal apparently forwarded that appeal to USMS, which informed Akal that the appeal was denied. Akal then terminated Atterbury's employment.

*Hauschild's alleged misconduct*. In July 2012, USMS requested Akal to investigate eleven allegations concerning Hauschild that it had received in two

anonymous letters. One allegation was that Hauschild had sent his brother, who is a convicted felon, to the home of a U.S. Bankruptcy Judge to fix a plumbing problem, and, as Lead CSO, had assigned an on-duty Court Security Officer to accompany his brother, who could not be left unattended. Akal's report to USMS substantially confirmed this allegation and recommended that Hauschild, who was at that point temporarily suspended, be disciplined with a "time served" suspension and given a final warning. Akal's investigation did not confirm any of the other anonymous allegations against Hauschild.

In a letter identical (except for names and dates) to the letter directing Atterbury's removal, USMS notified Akal that it disagreed with Akal's findings and recommendation, and that Hauschild's actions had undermined confidence in his ability to perform his duties as a CSO. USMS ordered that Hauschild be permanently removed from performing under the Akal-USMS Contract. USMS did not provide a statement of its findings or reasons for removing Hauschild. Hauschild challenged his removal and asked USMS for a hearing. Akal asked USMS to reconsider the removal decision. USMS informed Akal that it had received Hauschild's appeal and had denied it. Akal then terminated Hauschild's employment.

*Litigation procedure*. Atterbury filed a suit in the Western District of New York to challenge the termination of his employment, and Hauschild filed a similar suit in the Southern District of New York. For purposes of the pending appeal, we need to note only the following procedural aspects of each case. Atterbury's complaint included a claim under the Administrative Procedures Act ("APA"), specifically, that "USMS violated the APA, 5 U.S.C. § 706(2)(A) or § 706(2)(B), because its decision to remove Atterbury from the CSO program, thus ending his employment, without sufficient due process was contrary to his constitutional rights." Atterbury Complaint ¶ 58. He claimed that he had a constitutionally protected property interest in his continued employment by virtue of the "just cause" provision of the CBA. *Id*. ¶ 48. Judge Arcara dismissed the complaint, ruling, among other things, that Atterbury's APA claim was really "a disguised contract action" for which jurisdiction under the Tucker Act, *see* 28 U.S.C. § 1491(a)(1) lies in the Court of Federal Claims, *see* 28 U.S.C. § 1346(a). *See Atterbury v. United States Marshall [sic] Service*, No. 12–CV–00502–A(F), 2014 WL 3392725, at *9–*13 (July 10, 2014) ("*Atterbury I*"). Judge Arcara did not reach the merits of Atterbury's APA claim based on an alleged property interest in continued employment arising from the "just cause" provision of the CBA.

Atterbury appealed, and we reversed. *See Atterbury v. United States Marshals Service*, 805 F.3d 398, 409 (2d Cir. 2015) ("*Atterbury II*"). First, we noted that in *Stein v. Board of the City of New York*, 792 F.2d 13 (2d Cir. 1986), we had recognized that "an employee of a government contractor may under certain circumstances have a constitutionally protected property interest in continued employment." *Atterbury*, 805 F. 3d at 407. The plaintiff in *Stein* had a contract with his employer providing that he could not be discharged except for "good cause," *Stein*, 792 F.3d at 17, and we there concluded that this clause "created a protected property interest" for Stein. *See id. In Atterbury II*, we stated, "Atterbury's circumstances parallel those of the plaintiff in *Stein*. His complaint can fairly be read to allege that the CBA's 'just cause' provision gave him a protected property interest in continued employment." 805 F.3d at 407. Finally, we ruled that Atterbury's APA claim "has a basis independent of any contract with the United States" and therefore "does not fall within the scope of the Tucker Act." *Id.* at 409. We remanded for further proceedings. *See id*.

On remand, Judge Arcara considered the merits of Atterbury's APA claim. *See Atterbury v. United States Marshals Service*, No. 12-CV-502–A, 2018 WL 2100600, at *2–12 (W.D.N.Y. May 7, 2018) ("*Atterbury III*"). First, he recognized that the

ultimate question was whether Atterbury had a legitimate claim of entitlement to continued employment as a CSO. *See id*. at *7. He then stated that "[t]hat question cannot be answered without referring to the USMS-Akal contact, which the CBA explicitly references." *Id*. at *8 n.4. Judge Arcara acknowledged that section 8.1 of the CBA provided that no employee "'shall be disciplined or terminated without just cause.'" *Id.* (quoting CBA § 8.1). He then noted that "[s]ection 4 of the CBA provides that a CSO may be 'discipline[d]' only 'subject to the grievance and arbitration procedures, *except* for those issues involving USMS rights under the contract between the USMS and the Company," *id*. at *9 (quoting CBA § 4) (emphasis and second brackets in original), and that section H-3(b) of the Akal-USMS contract provides:

> The United States Marshal Service reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO. Decisions rendered under any dispute resolution process . . . shall not be binding upon the United States Marshals Service.

*Id*. (quoting Akal-USMS contract § H3(b) (ellipsis in original).

Judge Arcara concluded that the CBA and the Akal-USMS contract, read together, created a "hybrid employment contract, unlike the contract at issue in *Stein*," *id*. at *11, that the Akal-USMS contract "vests considerable discretion in the USMS to decide what factors are relevant to a matter of CSO discipline," *id*. at *10,

10

and that Atterbury therefore "has no property interest in his continued employment," *id*. at \*11. Judge Arcara granted the motion of USMS for summary judgment and denied Atterbury's motion for summary judgment. *See id*. at \*12. Atterbury's timely appeal is No. 18–1713.

In the Southern District case, Hauschild's complaint included the same APA claim that Atterbury had made in the Western District case. Hauschild Complaint ¶ 61. Like Judge Arcara, Judge Seibel initially ruled that Hauschild's APA claim was a contract claim for which jurisdiction was precluded by the Tucker Act. *See Hauschild v. United States Marshals Service*, No. 13-CV-5211 (CS), 2015 WL 13203452, at \*7–\*8 (S.D.N.Y. Aug. 28, 2015) ("*Hauschild I*"). We reversed that ruling in light of *Atterbury II*. *See Hauschild v. United States Marshals Service*, 672 F. App'x 93 (2d Cir. 2016) ("*Hauschild II*").

On remand, Judge Seibel first ruled that she could consider not only the CBA contract but also the Akal-USMS contract, which was referred to in the CBA. *See Hauschild v. United States Marshals Service*, No. 13–CV–5211 (CS), 2018 WL 3014095, at \*4 (S.D.N.Y. June 15, 2018) ("*Hauschild III*"). However, she disagreed with Judge Arcara in *Atterbury I* and ruled that the "just cause" provision of the CBA created a property interest in Hauschild's continued employment as a CSO,

11

unimpaired by any other language in the CBA or the Akal-USMS contract. *See id.* at *7–*10. She therefore denied the summary judgment motion of the USMS.

Turning next to the issue of whether Hauschild's employment was terminated without the procedural protections of due process, Judge Seibel noted that Hauschild was given an opportunity to provide oral and written statements in response to each allegation against him, inferring that he must have seen the July 12, 2012, letter from USMS to Akal, which requested an investigation, because the language in Hauschild's statement was nearly identical to the language in the July 12 letter. *See id.* at *11. She also noted that Hauschild was given an opportunity to submit a post–termination response. *See id*. However, she pointed out, "The record does not indicate that [Hauschild] was provided with Akal's investigation report, the information upon which the report was based, or any other information upon which USMS based its decision." *Id*.

Judge Seibel ruled that "neither Supreme Court precedent nor Second Circuit precedent dictates that a full adversarial hearing is necessarily required post-termination to comport with due process." *Id*. at *12. Then, carefully endeavoring to apply the due process analysis of *Mathews v. Eldridge*, 424 U.S. 319, 344–45 (1976), she concluded that "the risk-of-error factor tilts in [Hauschild's]

favor, because there are concerns about witness credibility and reliability, and thus the potential value of a hearing in which [Hauschild] can respond to the evidence against him and perhaps confront his accusers is substantially greater." *Id.* She therefore ruled that the process accorded Hauschild was "constitutionally deficient," *id.*, granted his motion for summary judgment as to his claim under 5 U.S.C. § 706(2)(B), and remanded to the USMS for further proceedings, *see id*. *13. The timely appeal of USMS is No. 18–23783.

We granted Atterbury's motion to consolidate his appeal with USMS's appeal in Hauschild's case.

Discussion

Confronting carefully written opinions of two experienced District Judges reaching opposite conclusions on the same issue arising under the same contracts, we agree with Judge Seibel. Both judges agreed that the issue on the APA claim of both Atterbury and Hauschild is whether they have a constitutionally protected property interest in their continued employment as CSOs.[1] They also agreed that

---

[1] In some circumstances, an employee, terminated from one position, might not be able to assert denial of a constitutionally protected property interest if the employer reassigns the employee to another position with no adverse consequences. However, as we noted in A*tterbury II*, "[T]he defendants have not argued, nor is there any basis in the record for us to infer, that Akal had any non-CSO positions open to which Atterbury could have been reassigned." 805 F.3d at 407 n.4.

this issue arose only on the APA claim under section 706(2)(B), which requires a reviewing court to "hold unlawful and set aside agency action . . . found to be . . . contrary to constitutional right," and not on a free-standing constitutional claim of the sort recognized in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Cf. Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) ("[E]xpanding the *Bivens* remedy is now a disfavored judicial activity.") (quotation marks omitted). Both judges dismissed the employees' *Bivens* claims. We affirmed the dismissal of Atterbury's Bivens claim in *Atterbury II*, *see* 805 F.3d at 405, and we noted in *Hauschild II* that Hauschild had not sought review of the dismissal of his *Bivens* claim. *See* 672 F. App'x at 94 n.1.

We agree with Judge Seibel that the "just cause" sentence of section 8.1 of the CBA unequivocally creates a property interest in continued employment: "No employee, after completion of his or her probationary period, shall be disciplined or terminated without just cause." CBA contract, § 8.1. As she noted, we had ruled in *Stein* that a "good cause" provision in an employee's contract with his private employer created a property interest, "notwithstanding a provision in the contract between the employer and the Board of Education requiring the employer to remove an employee whom the Board deemed to fall below acceptable standards."

14

*Hauschild III*, 2018 WL 3014095, at *9 (citing *Stein*, 792 F.2d at 14, 17). *See Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) ("[A] protectable property interest may arise in a situation where an employee may be removed only for cause.").

USMS contends that the "just cause" sentence of section 8.1 of the CBA is modified by the following sentence in that section:

> "It is agreed by the parties that in instances when the employee is removed from working under the [Akal-USMS Contract] by the USMS, or when the employee's authority to work as a Court Security Officer under the [Akal-USMS Contract] is otherwise denied or terminated by the USMS, or the Employee no longer satisfies the USMS's qualifications for his or her position, the Employee may be terminated without recourse to the procedures under this Agreement . . . ."

CBA § 8.1 USMS says that the effect of this sentence is to strip employees "removed from service by an action of the USMS . . . [of] the only avenue the CBA provides to challenge disciplinary or termination decisions," Br. for USMS at 36. However, this argument ignores the avenues outside of the CBA processes by which employees can challenge a removal not supported by cause, such as a breach-of-contract action against Akal under Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), as Judge Seibel pointed out. *See Hauschild III*, 2018 WL 3014095, at *8. Furthermore, the "without recourse" sentence is sensibly read

to do no more than exempt terminations ordered by USMS from the CBA's dispute resolution processes.[2]

Also bearing on a literal reading of the CBA's "just cause" provision is the fact that in other CBAs between Akal and a union representing CSOs, the "just cause" provision explicitly exempted terminations ordered by the USMS. *See Strolberg v. United States Marshals Service*, 350 F. App'x 113, 114 (9th Cir. 2009); *International Union, Security, Police, and Fire Professionals of America (SPFPA) v. United States Marshal's Service*, 350 F. Supp. 2d 522, 534 (S.D.N.Y. 2004).

Finally, we reject the argument of the USMS that section H-3(b) of the Akal-USMS contract somehow modifies the "just cause" provision of the CBA. Section H-3(b) provides, "The United States Marshals Service reserves the right at all times to determine the suitability of any Contractor employee to serve as a CSO." Preliminarily, we do not agree with Judge Arcara that the Akal-USMS contract can modify the unambiguous "just cause" language of the CBA simply because there is a reference (although not an incorporation by reference) to the contract in the CBA. More importantly, our decision in *Stein* has already rejected a similar argument. As we noted in *Atterbury II,* "the 'just cause' provision in [Stein's]

---

[2] In *Atterbury II*, we noted the existence of the "without recourse" sentence, but expressed no view on its significance because USMS had not relied on it on appeal. 805 F.3d at 407 n.3.

employment contract created a protected property interest" and "the city had transgressed on that claim of entitlement by disqualifying the plaintiff under the 'good moral character' provision" of the employer's contract with the city. 805 F.3d at 407. Similarly here, the "suitability" provision of the Akal-USMS contract would transgress the employee's protected property interest if it were permitted to override the "just cause" provision of the CBA. Judge Seibel relied on this understanding of *Stein*. *See Hauschild III*, 2018 WL 3014095, at *9.

We conclude that both Atterbury and Hauschild had a constitutionally protected property interest in their continued employment as CSOs. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 178 (3d Cir. 2007) (concluding that, with respect to CSOs, "a private employment contract with a 'just cause' termination clause can create a constitutionally protected property interest"); *cf. Stein*, 792 F.2d at 15–17.

We also conclude that the procedures USMS used for the terminations of employment of both Atterbury and Hauschild have thus far not comported with the requirements of due process. Although Atterbury and Hauschild were informed of the initial misconduct allegations that gave rise to Akal's investigations, USMS provided no explanation of the reasons for its decisions that they be removed from the CSO program. Instead, it sent both Atterbury and

17

Hauschild the same form letter, which stated only that USMS "d[id] not concur with Akal's findings and proposed disciplinary strategy" and that each CSO's "actions have undermined the District's confidence and trust in [his] ability to effectively perform his duties." Neither letter identified which of Akal's findings it rejected. *See* Supp. App'x at 15, 323. As to Atterbury, who was the subject of one misconduct allegation, which Akal found unsubstantiated, USMS did not identify the findings of Akal with which it disagreed or the actions of Atterbury on which USMS relied. And, since the facts were in dispute, some form of hearing was required. As to Hauschild, who was the subject of eleven misconduct allegations, only one of which Akal regarded as substantial, USMS did not indicate whether it based its decision on the substantiated allegation, on any of the unsubstantiated allegations, or both. And, as Judge Seibel recognized, to the extent that facts were in dispute, some form of hearing was required.

*Remedy*. There remains for consideration the appropriate remedy. In *Hauschild II*, we said only that we "remand the matter for further proceedings consistent with this order." 672 F. App'x at 96. Because that decision ruled only on the District Court's jurisdiction, that decretal language was sufficient. However,

18

now that we have upheld Atterbury's and Hauschild's claims on the merits, we need to make our remand slightly more precise.

Because the claims we have sustained arise under the APA, which permits review of agency action, the district courts in both cases must remand to USMS for further proceedings. That is the procedural route Judge Seibel ordered to be followed, *see Hauschild III*, 2018 WL 3014095, at *13, and is the route sought to be followed by Atterbury, *see* Br. for Atterbury at 48.

## Conclusion

In Atterbury's case, No. 18–1713, we reverse and remand to the District Court with direction to remand to USMS for further proceedings consistent with this opinion; in Hauschild's case, No. 18–2378, we affirm and remand to the District Court with direction to remand to USMS for further proceedings consistent with this opinion.